IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHELLE R. THOMAS                                                PLAINTIFF

v.                              CIVIL NO. 16-3044

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Michelle R. Thomas, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on April 1, 2013, alleging an inability to work since December 3, 2012, due to Hepatitis C, Barrett's Esophagus, GERD, arthritis, back problems, high blood pressure, carpal tunnel syndrome in both hands, and left ankle problems. (Doc. 9, pp. 73, 80, 91-92, 105-106). For DIB purposes, Plaintiff

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

maintained insured status through September 30, 2017. (Doc. 9, pp. 80, 91). An administrative hearing was held on August 14, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 36-72).

By written decision dated January 9, 2015, the ALJ found that during the relevant time period, Plaintiff had the following severe impairments: Hepatitis C, Barrett's Esophagus, GERD, dyslexia, disorder of the back, depression, anti-social personality disorder, and obesity. (Doc. 9, p. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 9, pp. 19-21). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to perform work where interpersonal contact is routine but superficial. The complexity of tasks is learned by experience with several variables and judgment is within limits. Supervision required is little for routine work but detailed for non-routine work.

(Doc. 9, pp. 21-27). With the help of a vocational expert (VE), the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could perform work as a machine tender, an inspector, and an assembler. (Doc. 9, p. 29).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 9, 2016. (Doc. 9, pp. 5-8). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

### III. Discussion:

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in failing to find Plaintiff's fibromyalgia was a severe impairment; and 2) the ALJ erred in his determination of Plaintiff's RFC in that he failed to discuss the vocational impact of the Plaintiff's mental impairments on her ability to work. (Doc. 12). [2]

#### A. Plaintiff's Impairments:

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's fibromyalgia was medically determinable and met severity. At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. §§ 404.1520(c), 416.920(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015)

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner

(citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

As for Plaintiff's fibromyalgia, medical records showed that Plaintiff did not seek treatment, nor did she receive a diagnosis for fibromyalgia, until May of 2014, which was more than a year into the relevant time period. (Doc. 9, p. 460). The medical records also showed that Plaintiff saw Dr. Safwan Sakr, a rheumatologist, on three occasions. (Doc. 9, pp. 456-460, 474-479, 563-567). Dr. Sakr diagnosed her with fibromyalgia at her first visit. (Doc. 9, pp. 474-479). At the third visit, medical records indicated that Dr. Sakr referred Plaintiff to Dr. James Hawk for pain management, but the record showed that Plaintiff made only one visit to Dr. Hawk's office. (Doc. 9, pp. 563, 570-571). At the conclusion of the office visit with Dr. Hawk, he diagnosed her with lumbago, diabetes mellitus – not stated as uncontrolled and without mention of complication, obesity, tobacco use, unspecified arthropathy of the lower leg, unspecified arthropathy of the hands, and chronic pain syndrome, and recommended only medication, along with a low fat, low cholesterol, low calorie diet and exercises for her back, neck and knees, as treatment. There was no diagnosis or mention of fibromyalgia in Dr. Hawk's clinical notes. (Doc. 9, pp. 570-572). See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms). Moreover, no limitations were placed on

Plaintiff as a result of the fibromyalgia diagnosis or any other medical condition. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir .1999) (lack of physician-imposed restrictions militates against a finding of total disability). Lastly, Plaintiff did not allege that fibromyalgia was a disabling impairment in her application documents, which is significant, even if the evidence of such was later developed. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

Furthermore, while the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 404.1545(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 404.1523(c) (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

After reviewing the record, the Court finds that substantial evidence supports the ALJ's findings.

### B. Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and

6

aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A Function Report completed by Heather Hileman on Plaintiff's behalf, dated November 14, 2013, revealed that Plaintiff's conditions had impacted her daily life. (Doc. 9, pp. 273-281). However, Ms. Hileman also reported that Plaintiff had no problems with personal care; was able to ride in a car; was able to shop in stores for food and personal items; was able to pay bills; and was able to count change. (Doc. 9, pp. 273-277). The Report also stated that Plaintiff enjoyed watching television and playing computer games on a daily basis. (Doc. 9, p. 277). Furthermore, Plaintiff testified that on a typical day, she would get up in the morning, fix a cup of tea, play with her granddaughter, take a nap, and watch television. (Doc. 9, p. 61). Plaintiff also testified that her daughter would encourage her to take her dog outside and would bring dinner to her in her downstairs bedroom. (Doc. 9, pp. 61-62).

Furthermore, a General Physical Examination performed by Dr. Robert Chapa on June 5, 2013, revealed that Plaintiff was able to get out of bed, able to take a shower, and able to dress without assistance. She was also able to drive; manipulate the buttons on her clothing; turn doorknobs; tie her shoes; cook simple meals; do household chores, including laundry,

sweeping and mopping; grocery shop without assistance, complete a simple or complex cash or credit card transaction without assistance; and manage meager finances without assistance. (Doc. 9, p. 443). A Mental Diagnostic Examination performed by Dr. Diane Brandmiller, Ph.D. on November 7, 2013, revealed that Plaintiff would occasionally prepare simple meals; do her own laundry, but no other household chores; let her dog outside; watch television; use a computer; play video games for up to 45 minutes at a time; shop in stores; read a map; go outside three to four times a day to smoke; shower every three days without assistance; and complete a project, such as putting up curtains in a bedroom. (Doc. 9, pp. 449-450).

This level of activity belies Plaintiff's complaints of pain and limitation, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities—making breakfast, washing dishes and clothes, visiting friends, watching television and driving—were inconsistent with claim of total disability).

With respect to Plaintiff's physical impairments, medical records showed that she was treated conservatively with medication for her back disorder. An impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir.2002) (citations omitted). The most recent MRI of her lumbar spine, ordered by Dr. Sakr, revealed no acute abnormalities, some minimal degenerative changes at the L4-L5 and L5-S1 levels, and no areas of severe spinal canal or neural foraminal stenosis. (Doc. 9, p. 468). At a follow-up visit to Dr. Sakr, Plaintiff's physical exam was normal, including her gait. (Doc. 9, p. 460). At her only visit to Dr. Hawk for pain management, Plaintiff's physical exam showed some mild laxity and 1+ effusion in Plaintiff's left knee with

8

good range of motion. He prescribed Plaintiff pain medication, advised her to reduce her calorie, fat and cholesterol intake, and instructed her on exercises to strengthen her back, neck and knee. (Doc. 9, pp. 570-571). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir.1992) (course of conservative treatment contradicted claims of disabling pain). Plaintiff's impairments of GERD and Barrett's Esophagus were also all treated conservatively with medication and diet and appeared to improve with treatment. Lastly, Plaintiff's Hepatitis C was also treated with medication, and Plaintiff reported to mental health professional, Joy Melick, that while the Hepatitis C treatment was making her feel ill, she was responding well. (Doc. 9, pp. 624, 626).

With respect to Plaintiff's mental health treatment, Plaintiff submitted additional evidence to the Appeals Council, consisting of therapy records from Families, Inc. The Appeals Council determined that the information submitted did not show a reasonable probability that, either alone or when considered with the other evidence of record, would change the outcome of the ALJ's decision. (Doc. 9, p. 6). In this matter, the medical records consisted of therapy goals and objectives and notes from Plaintiff's therapy sessions. Plaintiff's most recent therapy records from Families, Inc. indicated that while Plaintiff was not ready for a modification to her treatment plan, she had made some progress toward meeting her therapy goals and objectives. (Doc. 9, pp. 632, 637, 649). After reviewing the record as a whole, the Court finds substantial evidence to support the mental impairment findings.

To the extent Plaintiff alleges she was unable to seek treatment for her physical or mental conditions due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical

9

treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The Court also notes that Plaintiff's medical records indicated that Plaintiff was able to support her smoking habit, while being counseled on tobacco cessation, throughout the relevant time periods. (Doc. 9, pp. 229, 366, 369, 379, 382, 390, 392, 395, 398, 402, 406, 409, 431, 441, 456-459, 477, 512, 520, 544, 588).

Therefore, although it is clear that Plaintiff has some limitations, she has not established that she is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability). Neither the medical evidence nor the reports concerning her daily activities support Plaintiff's contention of total disability. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C. The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.645(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required

to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." Id.

In the present case, when determining that Plaintiff could perform light work with limitations, the ALJ considered the relevant medical records, the medical opinions from treating, examining, and non-examining physicians, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff's capacity to perform light work with limitations is supported by the fact that the medical evidence does not indicate that Plaintiff's examining physicians placed restrictions on her activities that would preclude performing the RFC determined during the relevant time period. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) ("lack of medical restrictions inconsistent with claimant's complaints of disabling pain") (citations omitted). In addition, the record reflects that Plaintiff was able to tend to her personal needs with no assistance, take care of a pet, shop, do laundry, prepare simple meals, and play computer games for up to forty-five minutes at a time.

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform light work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

With respect to Plaintiff's mental impairments, the Court notes that the ALJ had before him Plaintiff's mental health records from Dayspring and noted that Plaintiff sought medical treatment there for only a couple of months in 2014. (Doc. 9, p. 25). The ALJ further considered that Plaintiff's GAF scores ranged between 45 and 64 in the medical records, but gave those scores little weight. (Doc. 9, p. 27). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores where the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010). The ALJ also discussed and ultimately afforded great weight to the non-examining medical consultant, Dr. Abesie Kelly, Ph.D., and the mental diagnostic examination of Dr. Diane Brandmiller, Ph.D., as their opinions as to Plaintiff's RFC were supported by the objective medical evidence of record. (Doc. 9, p. 27). Moreover, as previously discussed, the additional evidence submitted to the Appeals Council consisting of Plaintiff's mental health records from Families, Inc. was found to have no impact on the outcome of the ALJ's decision.

Based on the foregoing, the Court believes the record supports the ALJ's determination that Plaintiff could perform light work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience with several variables and judgment is within limits, and supervision required is little for routine work but detailed for non-routine work.

**D.      Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds

that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a machine tender, an inspector, and an assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 7th day of August, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE